**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

| | | |
|---|---|---|
| CLYDE ARMORY, INC., ROSS LEE LEROHL, | : | |
| BARRY HITCHCOCK | : | |
| FAMILY CHIROPRACTIC OF ATHENS, INC., | : | |
| and ATHENS MARINE, INC., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | |
| UNIFIED GOVERNMENT OF | : | 3:20-CV-00042-CAR |
| ATHENS-CLARKE COUNTY, | : | |
| BLAINE WILLIAMS, in his official capacity as | : | |
| Manager of Athens-Clarke County, Georgia, | : | |
| and JUDD DRAKE, in his official capacity as | : | |
| Attorney of Athens-Clarke County, Georgia, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## <u>FIRST AMENDED COMPLAINT</u>

COME NOW Plaintiffs and, pursuant to Federal Rules of Civil Procedure 15(a)(1)(A) and 20(a)(1), hereby file this First Amended Complaint against Defendants, Unified Government of Athens-Clarke County (hereinafter "Defendant ACC"), Blaine Williams in his official capacity as County Manager ("Defendant Williams"), and Attorney Judd Drake in his official capacity as County Attorney ("Defendant Drake"), challenging the constitutionality of Defendant ACC's Ordinance for the Second Declaration of a Local State of Emergency Related to

COVID-19; And for Other Purposes (the "Shelter in Place Ordinance")[1] as applied to Plaintiffs and other similarly situated individuals and businesses across Athens-Clarke County, Georgia, respectfully showing the Court as follows:

## INTRODUCTION

1.

This is a civil action for declaratory, injunctive, and other equitable relief on behalf of the Plaintiffs, whose business operations and ability to maintain a livelihood have been and will continue to be subject to unduly intrusive requirements under the Shelter in Place Ordinance.  As explained herein, the Shelter in Place Ordinance violates the Constitution of the United States and the Constitution of the State of Georgia, as well as Georgia statutory law.  Accordingly, this Court should hold it as unlawful, enjoin Defendant Drake and Defendant Williams and their subordinates from enforcing it, declare individual Plaintiffs' right to continue to pursue a livelihood as healthy individuals, declare corporate Plaintiffs' right to carry on their businesses as essential businesses under Georgia law, and award Plaintiffs their costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b).

2.

The Shelter in Place Ordinance is in violation of the Due Process and Equal Protection guarantees of the United States Constitution and the Constitution of the

---

[1] A true and correct copy of which is attached hereto as **Exhibit A**.

State of Georgia because there is no rational basis that requires all businesses to cease their business operations and quarantine healthy individuals.  See e.g., Old South Duck Tours v. Mayor & Alderman of City of Savannah, 272 Ga. 869 (2000).

3.

The Shelter in Place Ordinance's overly broad and vague language permits Defendants to arbitrarily interfere with Plaintiffs' day-to-day business operations and livelihood by permitting Defendants to arbitrarily define which businesses are and are not "Essential Businesses," which are generally exempt from the Shelter in Place Ordinance. See Bullock v. City of Dallas, 248 Ga. 164 (1991).

4.

The classification and distinctions created by the Shelter in Place Ordinance are arbitrary and capricious and bear no rational basis to the purpose of the Shelter in Place Ordinance.

5.

On its face, the Shelter in Place Ordinance exceeds the scope of the Defendant ACC's presumed police powers and therefore violates substantive due process as applied to Plaintiffs and all other individuals and businesses in Athens-Clarke County.

6.

The Shelter in Place Ordinance, as it applies to Plaintiffs and other individuals and businesses in Athens-Clarke County, is not a valid exercise of Defendant ACC's presumed police power, because closing Plaintiffs' businesses and quarantining healthy individuals is not substantially related to public health, safety or general welfare.

7.

Not only is the Shelter in Place Ordinance unfair and unwise as a matter of economic policy, it is unlawful as a legal matter. The irrational and arbitrary treatment of gun store, restaurant, chiropractic, and marine dealership employees and owners, and others who desire to obtain chiropractic services, or purchase and possess firearms, food and beverages, and marine boats and inspections violates the Equal Protection Clause of the United States Constitution and the Constitution of the State of Georgia.

8.

The Shelter in Place Ordinance also violates the right to bear arms secured by the Second Amendment of the United States Constitution and Article I, Section I, Paragraph VIII of the Georgia Constitution.

9.

Because the Shelter in Place Ordinance manifestly infringes upon several constitutional provisions and violates Plaintiffs' rights to operate their businesses and pursue employment, the ordinance should be declared unconstitutional. See e.g. Ga. Const. art. I, § 2, ¶ V, Paragraph V Cobb County School District v. Barker, 271 Ga. 35 (1999).

10.

Plaintiffs bring this suit under Georgia law and 42 U.S.C. § 1983, which provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.

## **PARTIES**

11.

Plaintiff Clyde Armory, Inc. ("Clyde Armory") is a Georgia corporation engaged in the business of purchasing, trading, and selling firearms, ammunition, tools, and other defensive and safety supplies to law enforcement and civilians. Plaintiff's principal place of business is 4800 Atlanta Highway, Athens, Georgia 30606.

12.

Plaintiff Ross Lee Lerohl is an individual who is a resident of Athens-Clarke County.

13.

Plaintiff Barry Hitchcock is an individual who is a resident of Athens-Clarke County.

14.

Plaintiff Family Chiropractic of Athens, Inc. ("Family Chiropractic") is a Georgia corporation engaged in the business of providing chiropractic services. Plaintiff's principal place of business is 2330 W. Broad Street, Athens, GA 30606.

15.

Plaintiff Athens Marine, Inc. ("Athens Marine") is a Georgia corporation engaged in the business of selling and inspecting watercraft, including providing inspections and maintenance for the watercraft of the United States Environmental Protection Agency, the United States Geological Survey, and the Georgia Department of Natural Resources, and the fire and rescue boats of the Athens-Clarke, Walton, Barrow, and Oconee counties' fire and rescue departments. Plaintiff Athens Marine's principal place of business is 135 Trade Street, Bogart, Georgia 30622.

16.

Defendant ACC is the governing body of Athens-Clarke County with authority and control over the operation of businesses within its jurisdiction and enforcement of the Code of Ordinances.

17.

Defendant Blaine Williams is named in his official capacity as the Manager of the Unified Government of Athens-Clarke County and is responsible for implementing and enforcing the Shelter in Place Ordinance.

18.

Defendant Judd Drake is named in his official capacity as the Attorney for the Unified Government of Athens-Clarke County and is responsible for implementing and enforcing the Code of Ordinances of Athens-Clarke County, including the Shelter in Place Ordinance.

19.

Defendants were served with the original Complaint by the Athens-Clarke County Sheriff Department.

**JURISDICTION**

20.

This Court has jurisdiction over this action. Defendant ACC is an agency of Athens-Clarke County, and Defendants Drake and Williams are Georgia residents who are joint obligors, joint promisors, agents, or copartners of Defendant ACC and act on behalf of Defendant ACC in Georgia.

21.

Venue is proper in Athens-Clarke County because Defendant ACC is subject to venue as an agency of Athens-Clarke County (e.g., <u>Hoffman v. Dept. of Corrections</u>, 218 Ga. App. 363 (1995)) and Plaintiffs have suffered harm in Athens-Clarke County as alleged herein.  Venue is proper in Athens-Clarke County as to Defendants Williams and Drake due to their official capacities as joint obligors, joint promisors, agents, or copartners of Defendant ACC.

## **FACTUAL BACKGROUND**

22.

On March 16, 2020, pursuant to O.C.G.A. § 38-3-51, Governor Brian Kemp declared a state of emergency existed due to COVID-19.

23.

On March 19, 2020, purporting to act pursuant to O.C.G.A. § 38-3-28, Defendant ACC passed the Shelter in Place Ordinance.

24.

Section 2 of the Shelter in Place Ordinance provides that all individuals living within Athens-Clarke County "shall shelter at their place of residence," "maintain social distancing of at least six feet from any other person when they are outside their residence," and "may leave their residences only for Essential Activities,

Essential Governmental Functions, or to operate Essential Businesses, all as defined in Section 10."

25.

Section 3 of the Shelter in Place Ordinance provides that "[a]ll businesses with a facility in the County, except Essential Businesses as defined below in Section 10, are required to cease all activities at facilities located within the County." Meanwhile, "[a]ll Essential Businesses are strongly encouraged to remain open." Id.

26.

Section 5 of the Shelter in Place Ordinance prohibits "[a]ll travel . . . except Essential Travel and Essential Activities as Defined below in Section 10."

27.

Section 10.a. of the Shelter in Place Ordinance provides that individuals may leave their residence only to perform "Essential Activities," as defined as activities or "tasks essential to their health and safety or to the health and safety of their family or household members . . . .;" "[t]o obtain necessary services or supplies for themselves and their family;" to engage in outdoor activity; to care for a family member or pet in another household;  or "[t]o perform work providing essential products and services as an Essential Business or to otherwise carry out activities specifically permitted in [the Ordinance]."

28.

Section 10 of the Shelter in Place Ordinance does not define "Essential Businesses" as including gun stores or other stores that sell weapons and tools that are designed for safety and self-defense.  Nor does Section 10 define "Essential Businesses" to encompass chiropractic services or marine dealerships.   Instead, Section 10.f defines "Essential Businesses" as including the following:

i.   Healthcare Operations and Essential Infrastructure;
ii.   Grocery stores, certified farmers' markets, farm and produce stands, supermarkets, food banks, convenience stores, and other establishments engaged in the retail sale of canned food, dry goods, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, and any other household consumer products (such as cleaning and personal care products). This includes stores that sell groceries and also sell other nongrocery products, and products necessary to maintaining the safety, sanitation, and essential operation of residences;
iii.   Food cultivation, including farming, livestock, and fishing;
iv.   Businesses that provide food, shelter, and social services, and other necessities of life for economically disadvantaged or otherwise needy individuals;
v.   Newspapers, television, radio, and other media services;
vi.   Gas stations and auto-supply, auto-repair, and related facilities;
vii.   Banks and related financial institutions;
viii.   Hardware stores;
ix.   Plumbers, electricians, exterminators, and other service providers who provide services that are necessary to maintaining the safety, sanitation, and essential operation of residences, Essential Activities, and Essential Businesses;
x.   Businesses providing mailing and shipping services, including post office boxes;
xi.   Educational institutions—including public and private K-12 schools, colleges, and universities—for purposes of facilitating distance learning or performing essential functions, provided that

        social distancing of six-feet per person is maintained to the greatest extent possible;

xii.     Laundromats, drycleaners, and laundry service providers;

xiii.    Restaurants and other facilities that prepare and serve food, but only for delivery or carry out. Schools and other entities that typically provide free food services to students or members of the public may continue to do so under this Order on the condition that the food is provided to students or members of the public on a pick-up and take-away basis only. Schools and other entities that provide food services under this exemption shall not permit the food to be eaten at the site where it is provided, or at any other gathering site;

xiv.    Businesses that supply products needed for people to work from home;

xv.    Businesses or manufacturers that supply other essential businesses with the support or supplies necessary to operate;

xvi.    Businesses that ship or deliver groceries, food, goods, or services directly to residences;

xvii.   Airlines, taxis, and other private transportation providers providing transportation services necessary for Essential Activities and other purposes expressly authorized in this Order;

xviii.  Home-based care for seniors, adults, or children;

xix.    Residential facilities and shelters for seniors, adults, and children;

xx.    Professional services, such as legal, accounting services, real estate services, when necessary to assist in compliance with legally mandated activities;

xxi.    Unless otherwise preempted by state law, childcare facilities providing services that enable employees exempted in this Order to work as permitted. To the extent possible, childcare facilities must operate under the following mandatory conditions:

        1. Childcare must be carried out in stable groups of 12 or fewer ("stable" means that the same 12 or fewer children are in the same group each day).

        2. Children shall not change from one group to another.

        3. If more than one group of children is cared for at one facility, each group shall be in a separate room. Groups shall not mix with each other.

        4. Childcare providers shall remain solely with one group of children.

29.

On its website, Defendant ACC maintains a List of Businesses Considered Essential and Not Considered Essential.[2] On March 21, 2020, Defendant ACC updated its website to recognize "Gun Stores" as "Essential Businesses."[3]   On March 25, 2020, one day after this action was filed in the Athens-Clarke County Superior Court and pointed out the website's arbitrary updates, Defendant ACC updated its website again to state the following:

> ***In the evolving pandemic, the Mayor and Commission may modify allowances related to Essential Businesses by amending the Declaration. Even for Essential Businesses, compliance with the Social Distancing Requirements of the Declaration is required and expected.***

(Emphasis in original.)[4]

30.

To date, despite many updates to the list, Defendant ACC has not amended the Shelter in Place Ordinance a single time. Compare **Exhibit C** with **Exhibit B**.

31.

Defendant ACC's website also includes a webpage to provide "Ongoing updates of FAQs related to the ordinance."[5] In response to the question of whether

---

[2] See "Athens-Clarke County Business Categories for 2nd Declaration of Local Emergency Order on March 19, 2020," https://www.athensclarkecounty.com/DocumentCenter/View/67309/List-of-Businesses-Considered-Essential-and-Not-Considered-Essential (a true and correct copy of which is attached hereto as **Exhibit B**).
[3] A true and correct copy of the March 21, 2020, 8:49 P.M. update is attached hereto as **Exhibit C**.
[4] See **Exhibit B**.
[5] See "Are Gun Stores and Places that Sell Guns Considered Essential?," (last updated, Mar. 22, 2020, 1:53 P.M.), https://www.accgov.com/Faq.aspx?QID=1169 (a true and correct copy of which is attached hereto as **Exhibit D**).

"gun stores and places that sell guns [are] considered essential," the webpage

provides the following:

> The Second Amendment protects an individual's right to bear arms. Although courts have found that that right is not unlimited and that certain regulations are constitutional (e.g., prohibitions on carrying concealed weapons, prohibitions on felons possessing firearms), caution should be used when passing any regulation that would affect this constitutional right. It is very likely that an ordinance that closed gun stores would violate the Second Amendment. See, e.g., *District of Columbia v. Heller*, 554 U.S. 570 (2008), where the U.S. Supreme Court found that District of Columbia's ban on hand guns violated the Second Amendment.

> In *Heller*, the Court noted that hand guns were commonly used for self defense. Closing gun stores arguably has the same effect as banning hand guns – it interferes with an individual's right to self defense. <u>Accordingly, gun stores should be considered "necessary to maintaining the safety…of residences" under section 10.a.ii of the ordinance and may remain open</u>, provided they comply with Social Distancing requirements as outlined in the emergency management ordinance.[6]

(Emphasis added.) However, Defendant ACC's webpage lacks the force of law.

While Defendants argue that gun stores are "Essential Businesses" under Section

10.a.ii of the Shelter in Place Ordinance, it is Section 10.f. which defines "Essential

Businesses," not Section 10.a.  Section 10 defines only "Essential Activities."

The language of Section 10.a.ii. providing that individuals may leave their

residence to obtain necessary "products necessary to maintain the safety, sanitation,

and essential operation of residences," may be construed as defining shopping for

---

[6] <u>Id.</u>

- 13 -

guns as an "Essential Activity."   However, the Shelter in Place Ordinance's definition of "Essential Businesses" in Section 10.f. omits any similar language. By failing to include a definition of "Essential Businesses" which encompasses "products necessary to maintain . . . safety," the ordinance fails to define guns stores as "Essential Businesses."   Therefore, pursuant to Section 3, the ordinance orders the cessation of all activities of guns stores in Athens-Clarke County. Thus, while purchasing guns may be an "Essential Activity" under Section 10.a., the ordinance does not allow for guns stores to be open for individuals to carry out such essential activity, as gun stores are outside of the definition of "Essential Businesses" under Section 10.f.

32.

Plaintiff Lerohl is a college student and an employee at an Athens restaurant. As a direct and proximate cause of the Shelter in Place Ordinance, Plaintiff Lerohl—a healthy individual—has lost his job and the quarantine is actively prohibiting him from seeking employment opportunities and a source of income to continue his livelihood at businesses other than the businesses which have been arbitrarily deemed to be essential under the ordinance.

33.

Plaintiff Barry Hitchcock is a chiropractic doctor who owns and operates Plaintiff Family Chiropractic.   Plaintiffs Hitchcock and Family Chiropractic

commonly diagnose and manage mechanical spine pain and treat patients who have headaches and neck and back pain.

34.

As a direct and proximate result of the Shelter in Place Ordinance, Plaintiff Hitchcock—a healthy individual—has been forced to quarantine against his will. The Shelter in Place Ordinance imposes a quarantine on Plaintiff Hitchcock which arbitrarily orders him to close his business.  Plaintiff Hitchcock has suffered economic and noneconomic harm as his business has lost business as a direct effect of the Shelter in Place Ordinance not including chiropractic facilities as "Essential Businesses."

35.

As a direct and proximate result of the Shelter in Place Ordinance, Plaintiff Family Chiropractic has been instructed to close its business by an Athens-Clarke County Code Enforcement employee named "Suzanne McCook."  Such closure would force Plaintiffs Hitchcock and Family Chiropractic to forbear from treating their patients and receiving an income.  Plaintiff Family Chiropractic and other chiropractic facilities in Athens-Clarke County are arbitrarily excluded from the Shelter in Place Ordinance.  Because of the vague language of the Shelter in Place ordinance and demand from Athens-Clarke County Code Enforcement, Plaintiff

Family Chiropractic has suffered economic and noneconomic harm and is unsure of its rights.

36.

Plaintiff Athens Marine has been negatively affected by the Shelter in Place Ordinance because it has left Plaintiff Athens Marine and its customers unsure as to whether its business is defined as an "Essential Business" under Section 10.f.  As a consequence of the vague ordinance, Plaintiff Athens Marine closed its business for a day before making the decision to reopen and wait for Defendants to inform it that its business is not considered an essential business.  The language of the ordinance does not encompass dealerships which provide essential inspections and maintenance services for lifesaving and environmental protection services.

**COUNT ONE:  EMERGENCY INJUNCTION AND DECLARATORY JUDGMENT DECLARING THE SHELTER IN PLACE ORDINANCE IS AN ULTRA VIRES ACT AND AN ABUSE OF POLICE POWERS**

37.

Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

38.

Even though the proposed declaration is termed a Shelter in Place Ordinance, its effect is that of a quarantine or order of isolation, as contemplated by O.C.G.A. § 31-12-4.  Under the Department of Public Health regulations promulgated pursuant to that statute, "'Isolate' means to separate, confine, or restrict the movement of

- 16 -

persons who are infected with a communicable disease," <u>See</u> Ga. Comp. R. & Regs. 511-9-1-.02(7), and "'Quarantine' means to separate, confine, or restrict the movement of persons who were or may have been exposed to a communicable disease," <u>See Id.</u> at -.02(12).

39.

These regulations also define "social distancing" as "the measures taken whether voluntarily or under an administrative or judicial order to limit or prevent the spread of disease or exposure to toxic conditions.  Such measures may include exclusion policies, isolation, quarantine, curfew, partial or complete closure of facilities including places of business, whether public or private, and restriction of movement, including the closing of borders." <u>Id.</u> at -.02(13).

40.

It is clear that the Shelter in Place Ordinance by Defendant ACC mandates "social distancing" as defined by regulation.  However, the effect of the declaration on the residents of Athens-Clarke County goes well beyond simply restricting movement or curfew—it is nothing less than a quarantine of tens of thousands of people who are not infected with the Coronavirus nor have they been exposed to the Coronavirus.  This sort of baseless confinement of healthy individuals violates the United States Constitution.

41.

In the case of <u>Jew Ho v. Williamson</u>, 103 F. 10 22–23 (C.C.N.D. Ca. 1901), the U.S. District Court for the Northern District of California considered the constitutionality of the City of San Francisco's quarantining of twelve blocks of a neighborhood due to a suspected outbreak of bubonic plague, when there was no evidence of the presence of disease throughout the entire neighborhood.  The court held that the "quarantine cannot be continued, by reason of the fact that it is unreasonable, unjust, and oppressive, and therefore contrary to the laws limiting the police powers of the state and municipality in such matters." <u>Id.</u> at 26.  This Shelter in Place Ordinance does exactly what the court held to be unconstitutional in San Francisco — control the movement of a large number of people who were not infected or necessarily exposed to any infectious disease.

42.

Similarly, the Court of Appeals of New York (New York's highest appellate court) considered the legality of the confinement of people in Brooklyn who refused to be vaccinated against smallpox when they were not alleged to have been infected with the disease nor exposed to an infected person.  <u>See</u> <u>In re Smith</u>, 101 Sickles 68, 146 N.Y. 68 (1895).  In examining the powers of the health commissioner of the city of Brooklyn, the court found that "there must be an inspection of persons and things, and the resulting discovery, if they are not actually 'infected' with disease, that they

have been 'exposed' to it, and that the conditions actually exist for a communication of contagion, in order to bring into operation the power to isolate." Id. at 76.  Since the people who the commissioner quarantined were not infected, and nor was there proof that they were exposed to smallpox, the court held that the imprisonment of the petitioners in their houses was illegal.  Id. at 77.  The Shelter in Place Ordinance by the ACC government here is likewise illegal.

43.

The Shelter in Place Ordinance also has a complete lack of due process in challenging the restriction of people to their homes.  A quarantine or isolation order issued by the Department of Public Health is reviewable through a specific appeal procedure.  See Ga. Comp. R. & Regs. 511-9-1-.05(2).  However, when such an order is issued during a public health emergency proclaimed by the Governor—such as is the case now—review of the order is accomplished through the provisions of O.C.G.A. § 38-3-51(i).

44.

The provisions of the Shelter in Place Ordinance provide no similar mechanism for an appeal.   A resident of Athens-Clarke County, who the municipality believes is in violation of Shelter in Place Ordinance, would be subject to fines and potential incarceration, and could only challenge the lawfulness of his or her arrest through the court system.  Again, a resident who believes themselves to

be subject to an illegal detention could also file a writ of habeas corpus.  However, habeas is an extraordinary remedy, and its availability to challenge an illegal detention does not eliminate the requirement that the government allow a resident who is subject to a quarantine or isolation order a legal process to challenge that order.  This Shelter in Place Ordinance makes no provision for that challenge.

45.

The extensive citation to state laws and regulations above also brings up the second major issue with the Shelter in Place Ordinance:  it purports to legislate in an area for which the General Assembly has enacted general laws, in violation of O.C.G.A. § 36-35-3(a).  See, e.g., O.C.G.A. §§ 31-2A-4 (describing the powers of the Department of Public Health); 31-12-2.1 (enumerating the duties of the Department of Health during a public health emergency); 31-12-4 (granting to the Department of Public Health and county boards of health the authority to isolate, segregate, or quarantine persons).

46.

O.C.G.A. § 31-12-2.1 is especially pertinent here, as it appears to grant the Department of Public Health the primary responsibility for responding to public health emergencies.  Ga. Comp. R. & Regs. 511-9-1-.01 clearly states that the purpose of the regulations promulgated in that chapter are so that the Department of Public Health and county health boards can take appropriate action to respond to

public health issues.  Ga. Comp. R. & Regs. 511-9-1-.04 specifically states that "the District Health Directors may, in their capacity as chief executive officers of the County Boards of Health, exercise the authorities and powers set forth in Titles 31 of the Georgia Code, including social distancing, as determined necessary to control the spread of disease."  This action, however, can only be done through the District Health Director issuing an administrative order.  See id. at -.04(e).  Furthermore, the Governor's Emergency Declaration provides that the Department of Public Health, working with the Georgia Emergency Management and Homeland Security Agency, shall take necessary action to respond to the emergency.  See Governor's Executive Order of March 14, 2020, Declaring a Public Health State of Emergency for Novel Coronavirus (COVID-19) at p. 3 attached as **Exhibit E**.

47.

The State's enactment of statutes and extensive regulations in this area of public health, in addition to the Governor's declaration of a public health emergency, show a clear intent to legislate within this field.  Therefore, Athens-Clarke County government's attempt to legislate in this area is preempted by state law.  Titles 31 and 38 grant the state government certain powers to address a public health emergency, but those powers are not delegated to local governments (excepting the county boards of health).

48.

The Shelter in Place Ordinance is also unlawful because Defendant ACC lacks authority to pass laws which restricts the sale of firearms.  Although the Ordinance purports to be passed pursuant to emergency powers that became available to local governments when Governor Kemp declared a state of emergency, the Emergency Management Act expressly prohibits placement of restrictions on the sale of guns. See, O.C.G.A. § 38-3-51(d) ("In addition to any other emergency powers conferred upon the Governor by law, he may . . . (8) Suspend or limit the sale, dispensing, or transportation of alcoholic beverages, explosives, or combustibles; provided, **however**, that for purposes of this paragraph, the terms 'explosives' and 'combustibles' **shall not include firearms or ammunition or any component thereof** . . . ." (emphasis added)).

49.

Further, the Shelter in Place Ordinance is unlawful because it does not define "essentials" to include firearms and ammunition, which are clearly used to preserve, protect, and sustain life, health, safety, and economic well-being.  This is inconsistent with Georgia law since O.C.G.A. § 38-3-58 defines essential goods as "goods that are consumed or used as a direct result of a state of emergency declared by the Governor <u>or that are consumed or used to preserve, protect, or sustain life, health, safety, or economic well-being</u>." (emphasis added).

50.

The General Assembly has taken great measures to clarify that it does not intend to provide any government official or entity the power to limit the sale of firearms during an emergency. See O.C.G.A. §38-3-51(d) (specifically providing that the governor's power restrict the sale of combustibles does not encompass firearms); O.C.G.A. § 38-3-37 (prohibiting the government from (1) seizing firearms, (2) prohibiting possession of any firearm or ammunition, or (3) prohibiting license holders from carrying weapons during a state of emergency so long as possessing or carrying the weapon was not unlawful prior to the declaration of the state of emergency).

51.

Furthermore, as recognized by Defendant ACC's webpage,[7] the Second Amendment of the U.S. Constitution prevents Defendant ACC from passing an ordinance which closes gun stores. Article I, Section I, Paragraph VIII of the Georgia Constitution also protects Plaintiff's right to bear arms.

52.

Based on the above, Plaintiff believes the Shelter in Place Ordinance is an ultra vires act and an abuse of police powers and is thus unconstitutional.  The

---

[7] See **Exhibit D**.

Shelter in Place Ordinance should be enjoined on an emergency basis pending judicial review.

53.

Plaintiff is entitled to a final declaratory judgment that the Shelter in Place Ordinance is an ultra vires act, an abuse of police powers, unconstitutional, void, and unenforceable by the Defendants.  See Ga. Const. Art. I, § 2, Para. V. ("Legislative acts in violation of this Constitution or the Constitution of the United States are void, and the judiciary shall so declare them.")

## COUNT TWO:
## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION AND THE CONSTITUTION OF THE STATE OF GEORGIA

54.

Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

55.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

56.

Similarly, the Georgia Constitution provides that "[n]o person shall be denied the equal protection of the laws."  Ga. Const. Art. I, § I, Para. II.

- 24 -

57.

"Arbitrary and irrational discrimination violates the Equal Protection Clause under even [the] most deferential standard of review."  Bankers Life & Cas. Co. v. Crenshaw, 486 U.S. 71, 83 (1988).

58.

The Shelter in Place Ordinance arbitrarily and irrationally discriminates against "non essential" businesses, and leads to subjective results.  These subjective results are best demonstrated by the Commission continuing to change the definitions of "non essential" businesses versus "essential" businesses. Compare **Exhibit C** to **Exhibit B**. https://www.athensclarkecounty.com/DocumentCenter/View/67309/List-of-Businesses-Considered-Essential-and-Not-Considered-Essential (updating the list to includes gun stores as essential businesses).  These changes are being made without any commission meetings, votes, or public hearings and are based on the subjective opinions of an unknown source.

59.

There is no rational basis to enforce Shelter in Place Ordinance violations in "non essential" businesses because Clarke County residents are just as likely to be exposed to the Coronavirus in an "essential" business as they would be in a "non essential" business.  The Athens-Clarke County Commission has not shown how the

closure of all "non essential" businesses in Athens-Clarke County is the most efficient and practical means for the prevention and suppression of the Coronavirus.

60.

This Court should hold that the Shelter in Place Ordinance violates Plaintiffs' right to equal protection under the U.S. Constitution and the Constitution of the State of Georgia.

## COUNT THREE: VIOLATION OF THE DUE PROCESS CLAUSES OF THE U.S. CONSTITUTION AND CONSTITUTION OF THE STATE OF GEORGIA

61.

Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

62.

The Fourteen Amendment to the U.S. Constitution provides in part that "nor shall any state deprive any person of life, liberty, or property, without due process of law."

63.

Likewise, the Georgia Constitution provides that the "[p]rotection to person and property is the paramount duty of government and shall be impartial and complete." Ga. Const. Art. I, § I, Para. II.

64.

"Liberty" and "property" include the right to work in one's chosen occupation. e.g. Allgeyer v. Louisiana, supra.  Indeed, "the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." Truax v. Raich, 239 U.S. 33, 41 (1915).

65.

It is beyond the power of Athens-Clarke County to interfere with Plaintiffs' and their employees' liberty and property interests by working in their chosen occupation because the Shelter in Place Ordinance is not narrowly tailored to a compelling government interest.

66.

Thus, the Court should find that the Shelter in Place Ordinance unconstitutionally deprives Plaintiffs and their employees of their liberty and property without due process of law.

## COUNT FOUR:
## EMERGENCY INJUNCTION AND DECLARATORY JUDGMENT

67.

Plaintiffs incorporate the allegations of the preceding paragraphs by reference.

68.

Under O.C.G.A. § 9-4-2, "[i]n cases of actual controversy, the respective superior courts of this state shall have power, upon petition or other appropriate pleading, to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed; and the declaration shall have the force and effect of a final judgment or decree and be reviewable as such."

69.

There is an actual controversy between Plaintiffs and Defendants as the Shelter in Place Ordinance unlawfully purports to restrict their business and employment. The arbitrary list, which is subject to change without any notice, meeting, or vote, leaves Plaintiffs unsure as to whether their jobs and businesses are essential so that they may continue to exercise their rights.

70.

Sections 11 and 12 of the Shelter in Place Ordinance state, in relevant parts, the following:

> Covered businesses:  Any violation of this Order by covered businesses shall be considered ordinance violations subject to the general penalty provision outlined in Section 1-1-5 of the Official Code of Athens-Clarke County.

> The Mayor and Commission hereby direct the manager of the Unified Government of Athens-Clarke County, Georgia to return to the Mayor

and Commission by no later than Friday March 27, 2020, a report setting forth fiscal support recommendations for residents, including modifications to the Unified Government's fines, fees, and charges.

71.

Plaintiffs are uncertain as to their rights.  Plaintiffs believe the Shelter in Place Ordinance is unconstitutional and its arbitrary enforcement should be enjoined on an emergency basis pending judicial review.

72.

Notwithstanding the Shelter in Place Ordinance's unconstitutionality, Defendants have published their intent to enforce any purported violation of the Shelter in Place Ordinance with fines or jail time.

73.

Plaintiffs are entitled to a final declaratory judgment that the Shelter in Place Ordinance is unconstitutional, void, and unenforceable by the Defendants.

## COUNT FIVE: EMERGENCY INTERLOCUTORY AND PERMANENT INJUNCTION AS TO VIOLATION OF THE SECOND AMENDMENT AND GEORGIA LAW AS TO THE RIGHT TO BEAR ARMS AND

74.

Plaintiffs incorporate the allegations of the preceding paragraphs by reference.

75.

As stated above, the Shelter in Place Ordinance fails to list Plaintiff Clyde Armory's business, a private gun store that is involved in the sale and trade of guns

and ammunitions to Athens-Clarke County Citizens and Citizens of surrounding counties; Plaintiff Family Chiropractic, a business which serves patients with various medical problems; and Athens Marine, a vessel dealership which inspects and services watercraft for various agencies and fire and rescue departments as essential businesses.  Although presumably Defendant ACC is attempting to correct this unconstitutional ordinance by constantly updating its list of essential businesses, Defendant ACC has not taken any official act in order to amend the Stay in Place Ordinance.

76.

O.C.G.A. §38-3-51(d)(8) which deals with the emergency powers of the Governor, specifically excludes his ability to "suspend or limit the sale…of any firearms or ammunition or any component thereof."  Therefore, if the Governor is excluded from suspending the sale of any firearms and ammunition under Georgia Law, the exclusion would apply to Defendant ACC.

77.

O.C.G.A. §38-3-58(a) states defines essentials as goods that are consumed or used as a direct result of a state of emergency declared by the Governor or that are consumed or used to preserve, protect, or sustain life, health, safety, or economic well-being.  Therefore, by failing to define Plaintiffs' businesses as an essential

business, the Shelter in Place Ordinance's definition of essential businesses is in direct contradiction to Georgia Law.

78.

The Second Amendment of the United States Constitution protects an individual's right to bear arms. By Defendant ACC failing to include Plaintiff Clyde Armory's business as an essential business in the Shelter in Place Ordinance, the Shelter in Place Ordinance is unconstitutional.

79.

Plaintiffs will suffer irreparable injury, in the form of damage to its employment relationships, customer relationships and right to work, if the Court does not enjoin Defendant from enforcing the Shelter in Place Ordinance.

80.

The injuries to Plaintiffs and other business owners and employees in ACC outweigh any potential harm to Defendants from being enjoined.

81.

There is a substantial likelihood that Plaintiff will prevail on the merits, as reflected by Defendant ACC's statements on its website.

82.

Enjoining enforcement of the Shelter in Place Ordinance will not disserve the public interest.

83.

Plaintiffs are entitled to an emergency interlocutory injunction to prevent further harm pending adjudication on the merits.

84.

Plaintiffs are entitled to a permanent injunction restraining Defendants from enforcing the Shelter in Place Ordinance.

## COUNT SIX: COSTS AND ATTORNEY'S FEES

85.

Plaintiffs incorporate the allegations of the preceding paragraphs by reference.

86.

Plaintiffs are entitled to recover their costs of litigation from Defendants pursuant to the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988.

87.

Plaintiffs request that the Court award a reasonable attorneys' fee as part of the costs pursuant to the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988.

**WHRERFORE**, Plaintiffs respectfully pray that this Court:

a) Enter Judgment in its favor;

b) Declare that the Shelter in Place Ordinance is unconstitutional under the United States Constitution and the Constitution of the State of Georgia;

c) Issue preliminary and permanent injunctions enjoining the Shelter in Place Ordinance and enjoining Defendants from enforcing the Shelter in Place Ordinance;

d) Award Plaintiffs their costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988(b) and any other applicable law; and

e) Award Plaintiffs any further relief that is just and appropriate.

This 28th day of March, 2020.

**EPPS HOLLOWAY DELOACH & HOIPKEMIER, LLC**

By: */s/ Kevin E. Epps*_____
    Kevin E. Epps
    Georgia Bar No. 785511
    ***Attorney for Plaintiff***

By: */s/ J. Edward Allen*_____
    J. Edward Allen
    Georgia Bar No. 010950
    ***Attorney for Plaintiffs***

**WILTSHIRE DEFENSE**

By: */s/ Morris H. Wiltshire, Jr.*_____
    Morris H. Wiltshire, Jr.
    Georgia Bar No. 769605
    ***Attorney for Plaintiff***

1220 Langford Drive
Building 200-100
Watkinsville, Georgia 30677
kevin@ehdhlaw.com
ed@ehdhlaw.com
mo@wiltshiredefense.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have this date electronically filed this First Amended Complaint on behalf of Clyde Armory, Inc. with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following counsel of record:

COOK & TOLLEY, LLP
Gregory Sowell
Edward D. Tolley
V. Aidan Moss
gregsowell@cooktolley.com
etolley@cooktolley.com
vaidanmoss@cooktolley.com

Respectfully submitted this 27th day of March 2020.

**EPPS, HOLLOWAY, DELOACH
& HOIPKEMIER, LLC**

By:   */s/ Kevin E. Epps*
      Kevin E. Epps
      Georgia Bar No. 785511
      *Attorney for Plaintiff*

1220 Langford Drive
Building 200-101
Watkinsville, Georgia 30677
(706) 508-4000