```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE MIDDLE DISTRICT OF GEORGIA
                             ATHENS DIVISION
                  _____


CLYDE ARMORY, INC.              :    3:20-cv-42(CAR)

          VS                    :    March 30, 2020

UNIFIED GOVERNMENT OF           :
ATHENS-CLARKE COUNTY,
GEORGIA, ET AL                  :
                    Defendant
_____

                     TELECONFERENCE HEARING
             BEFORE THE HONORABLE C. ASHLEY ROYAL,
                UNITED STATES COURT DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:        KEVIN EPPS
                          ED ALLEN
                          1220 LANGFORD DR, BLDG 200-101
                          WATKINSVILLE, GA 30677

                          MORRIS WILTSHIRE, JR.
                          490 N. MILLEDGE AVE, STE 1
                          ATHENS, GA 30601

FOR THE DEFENDANT:        EDWARD D. TOLLEY
                          VIRGINIA MOSS
                          SPENCER TOLLEY
                          P.O. BOX 1927
                          ATHENS, GA 30603

                          GREGORY SOWELL
                          P.O. BOX 1927
                          ATHENS, GA 30603


_____
                    TAMMY W. DIROCCO, USCR
                        P.O. BOX 539
                    MACON, GA 31202-0539
                       (478-752-3497)
```

```
 1   March 30, 2020
 2   3:00 p.m.
 3                    P R O C E E D I N G S
 4          UNIDENTIFIED:  Tyler, the law clerk, and Kevin Epps
 5   with Epps, Holloway, DeLoach and Hoipkemier.
 6          COURTROOM DEPUTY:  Hi Tyler.
 7          Madam Court Reporter, are you present?
 8          COURT REPORTER:  Yes, ma'am, I am.
 9          COURTROOM DEPUTY:  Thank you.  Okay.  Who do I have
10   beside Tyler.  I know we have Sally.
11          MR. EPPS:  Hey Lee Anne.  It's Kevin Epps.  Morris
12   Wiltshire and Ed Allen on the call.
13          COURTROOM DEPUTY:  Hello gentleman.  Kevin, I have
14   not received anything yet?
15          MR. EPPS:  I got confirmation, Lee Anne, that it
16   just got docketed.  It's docket number 9, the letter in
17   response to Mr. Tolley's letter.  I just got it.  It came
18   through on mine about two minutes ago.
19          COURTROOM DEPUTY:  Yep.  Here it is.  Well, guess
20   what, Judge probably -- I hope it's not long.
21          MR. EPPS:  It's not.  It's not a long letter.
22          COURTROOM DEPUTY:  Good afternoon.
23          MR. TOLLEY:  Hey, Ms. Purvis.
24          COURTROOM DEPUTY:  Hello, Mr. Tolley.
25          MR. SOWELL:  Hey, this is Greg Sowell, Lee Anne.
```

1               COURTROOM DEPUTY:  Hey Greg.
2               MR. SOWELL:  We have Spencer Tolley and Aidan --
3     Virginia Aidan Moss with us too.
4               COURTROOM DEPUTY:  Aidan Moss?
5               MR. TOLLEY:  A-I-D-A-N, M-O-S-S (spelling).
6               MR. SOWELL:  Yeah, Virginia is her first name, but
7     she goes by Aidan.
8               Sorry.
9               COURTROOM DEPUTY:  So, Greg, Spencer and Aidan.
10              MR. SOWELL:  And Ed.
11              MR. TOLLEY:  And Ed.
12              COURTROOM DEPUTY:  And Ed is with us, okay.  Hold on
13    just a moment for me.
14              All right.  Judge Royal is with us now.
15              THE COURT:  How are y'all today?
16              MR. TOLLEY:  Just fine, Your Honor.
17              MR. EPPS:  Doing great, Judge.
18              THE WITNESS:  I'm flip-flopping this around a little
19    bit on y'all.  I appreciate y'all being available at 3:00.  I
20    had something earlier that didn't take nearly as long as I
21    thought it was going to take.
22              Well, of course, the reason that we set this meeting
23    up for this afternoon was to give Mr. Tolley the opportunity
24    to review your amendment and to see if he could still be ready
25    on Friday for this.  I don't think he can be.  And I don't

1  think I can be either for that matter.  It's obviously gotten
2  a good bit more complicated.
3          It started out with the brief information I have
4  about this as being more or less a Second Amendment case.  But
5  now it has gotten more complicated than that.
6          And I know that Mr. Tolley -- I read his letter that
7  this was going to expire on April 7th.  And I got the reply
8  to that, but I didn't look at it until about two minutes ago,
9  and it's Mr. Epps's response to that.
10         And so my question is; where are we going to go with
11 this at this point?  I mean, this is going to be complicated.
12 When we start dealing with constitutional claims it's very
13 easy for a lawyer to throw equal protection and due process,
14 you know, substantive due process, on and on, all these words
15 that basically are legal abstractions that take you about a
16 second to put into a complaint.  And they are abstractions
17 until they come to my desk and then all of a sudden they take
18 life and they require a lot of work in order for me to be able
19 to deal with them.  And I'm not complaining about that.
20 Actually Sally and I like working on these constitutional
21 questions.
22         But the Plaintiff has the burden of being able to
23 prove likely success on the merits.  And I won't know if there
24 is likely success on the merits or not until I've had the
25 opportunity to review the law that applies to each theory

1  here.  And so that is a problem that I have, which is a
2  problem that the Plaintiffs in this case have.
3           And so I will tell you that, you know, I have been
4  around for 70 years and had to live through a lot of scary
5  situations, but none like this one.
6           And I think that -- when you find yourself or when
7  you find a country in turmoil and panic, you know, just kind
8  of plowing around trying to figure out what needs to be done,
9  governments swing into action and they try to come up with
10 ways to protect their people, which is something that needs to
11 be done.  But sometimes the political clashes with the
12 constitutional.  And, you know, is that happening here?  I
13 don't know the answer to that.
14          But I do think that under conditions like we have
15 today that federal judges like me have to be more vigilant
16 about protecting people's rights -- we always have to be
17 vigilant about that -- but I think you understand what I mean.
18          And you can look back into American history and you
19 can see situations in which there were obvious violations of
20 people's rights.  A good example would be World War II when
21 all the Japanese in California were sprinkled out across
22 America during the war between the states.  Lincoln band
23 habeas corpus in Maryland.  1953 to '54 the Communist Party
24 was banned or maybe you couldn't be a representative or
25 something like that.  That was overturned by some federal

```
 1   court, not the Supreme Court.  So these things happen.
 2              And, you know, I think that governments are really
 3   trying to help their people and maybe they aren't helping
 4   their people or maybe they are helping their people in a way
 5   that's unconstitutional.
 6              So these are claims that need to be dealt with and
 7   I'm happy to deal with them.  The question is the time and
 8   what is needed to do that.  And obviously if the Athens-Clarke
 9   County comes back and says that these are recommendations and
10   not legal requirements then it would seem to me that that
11   would change the legal dilemma here.  I don't know.
12              I'm really just kind of talking out loud about some
13   of these ideas.  Certainly, as I said earlier, we can't get
14   this done by the seventh.  And I certainly understand that
15   there is no way that the Athens-Clarke County Commissioners
16   are going to say that selling guns is essential.  So I
17   understand that.
18              On the other hand, somebody who has chronic back
19   problems like I have could certainly think that going to a
20   chiropractor so they could get out of pain might be essential.
21   So I don't know.  I just point all this out because I think
22   these are complicated issues.
23              So that just gives you some general background about
24   my perspective about this.  And I would like to hear from the
25   lawyers about what they would like to do.
```

1     MR. TOLLEY: If, Your Honor, please, this is Ed
2  Tolley and Greg Sowell. Let me just see if I can't make the
3  response in sort of a logical way.
4     First of all, I certainly agree with everything the
5  Court just said.
6     Secondly, it's not in anyone's interest to run over
7  constitutional rights. I'm very familiar -- and the Judge and
8  I have to be the same age -- with a lot of the same things
9  that you've referenced.
10     Now, we've got a County Commission meeting coming up
11  on the seventh at which time this ordinance will be sunset or
12  other possibilities. It could be renewed. It can be limited.
13  It can be broadened. It can be narrowed. And those are
14  political decisions that the commission will make most likely
15  on the seventh.
16     Therefore, getting into court and fighting over this
17  existing ordinance that has four days of life left -- four or
18  five days of life left -- doesn't make a lot of sense to me.
19     Once the Commission makes its decision on the
20  seventh then Plaintiff's counsel will have an opportunity to
21  look at that decision. However that ordinance comes out, if
22  it comes out at all, and then they can decide whether they
23  want to continue this challenge or not.
24     If they decide they want to continue this challenge
25  I certainly understand. We are all lawyers and we will

1  respond accordingly.
2           I will advise the Court that we will be filing an
3  answer to the local lawsuit and the amended lawsuit by this
4  Friday, but we certainly won't be prepared for an evidentiary
5  hearing on the sixth or seventh, Your Honor.
6           I think we're going to have to have -- you are
7  correct that in saying that these are complicated issues that
8  they have raised and as a result the Court will expect from us
9  a quality response and that takes time.  You've got three
10 lawyers working on it right now.  So you can see where we're
11 going with this.
12          THE COURT:  Okay.  Mr. Epps.
13          MR. EPPS:  Judge Royal, I understand everything the
14 Court just said.
15          I think the issues that we are having here is that
16 this is a moving target for us every day with the
17 Athens-Clarke County Commission.
18          As I pointed out in my letter to you I know -- and
19 I'm sorry, Judge, I was getting ready for a 4:00 o'clock call.
20 I completely understand moving it up to 3:00.
21          They have a working session tomorrow that they are
22 going to be discussing this as to what they plan on doing,
23 what their agenda is saying as it relates to the following
24 Tuesday.  We're going to find out what the Commission is going
25 to be doing with this ordinance tomorrow.

```
1              I'm asking for something very simple just right now
2    as it just relates to Clyde Armory, understanding the
3    amendment.  I wouldn't call it an abandoned lawsuit.  I call
4    it the amended lawsuit.  As I have laid out and as I said in
5    our previous conference call, Judge, and Mr. Tolley had stated
6    that it is not their intention to enforce this ordinance
7    against Clyde Armory, yet we have the Mayor pro tem putting
8    statements out to the public that it could change in a whim.
9              Since Mr. Tolley and I cannot come to an agreement
10   we would ask the Court to enter an order on a temporary basis
11   allowing Clyde Armory, its employees and employer, to operate
12   without the threat of either a fine, a ticket, potential jail
13   time, related to this, so that we can at least move Clyde
14   Armory through this.
15             The other businesses that we amended to on Saturday
16   I'm sorry about the verifications Judge -- we do have
17   verifications on all those and we have that filed.  We will
18   address that because that has to do with the "as to" the
19   language of the ordinance as it relates to nonessential and
20   essential.
21             But since Mr. Tolley has stated that it is not their
22   position to enforce it, but we can't enter into a stipulation,
23   I can't see why we cannot enter an order at this time to at
24   least give us time to when we set a hearing on this to give
25   Clyde Armory the cover that it needs, especially in light of
```

1   the statements of the Mayor pro tem of Athens-Clarke County.
2           THE COURT: Okay. Well, let me ask you this
3   question first. Is Clyde Armory closed or are they still
4   operating?
5           MR. EPPS: We are still operating Judge. But the
6   problem that we're having at this point is that our customers
7   are confused as to whether or not they can come in and they
8   can do it. He's receiving these phone calls and there is
9   confusion going on as to what they can do. But they do have
10  the doors open right now, yes.
11          THE COURT: Well, Mr. Tolley, do you -- if I
12  understand what you're saying, you're asking me to essentially
13  enter an order by agreement that just to short-circuit it so
14  they won't be prosecuted for doing business. Isn't that the
15  essence of it?
16          MR. TOLLEY: Yeah, I guess that's what he's asking
17  for. But as we pointed out to the Court last Friday this
18  ordinance already permits the gun store to do business.
19          The Heller decision out of the DC Circuit permits
20  the gun store to do business and we have no authority to shut
21  it. They have not received a citation. I can say with all
22  confidence they will not receive a citation.
23          And it's just -- and more amazingly to me, just a
24  week ago on the front page of the Athens Banner-Herald, was a
25  full-page article about Franklin Gun Store which has sold

1  every gun in the store and they are almost across the street
2  from Clyde Armory.  So the idea that some sort of emergency
3  court order is needed here I respectfully suggest to the Court
4  would be inappropriate.
5          THE COURT:  Well, of course, Mr. Epps what you're
6  really asking me to do is to go ahead and grant your TRO.
7          MR. EPPS:  It is, Judge Royal, just to Clyde Armory.
8  And I have never been in a position with this, Judge, where I
9  have opposing counsel telling me that they don't intend to
10 force it, but when I asked for an order, especially in light
11 of the letter that I just sent you, to say -- then to keep it
12 open.  That's all we're asking for Clyde Armory.  We will
13 address everything else letter.
14         THE COURT:  Well, the reason that they won't do that
15 is what I said earlier.  The ACC is not going to say it's,
16 okay to sell guns.  There would be a big uproar about that.
17         So, anyway -- I don't know how I can legitimately
18 get to where you want me to go, which essentially is to
19 sidestep my usual responsibilities for entering a TRO which is
20 already -- I mean, it's really an extreme measure any way.
21         So I understand -- but I don't know how to get
22 there.  I really don't.
23         This is my suggestion.  When will there be something
24 definitive from the ACC, Mr. Tolley?
25         MR. TOLLEY:  Your Honor, we anticipate there will be

1  something definitive from them at their evening meeting on
2  April 7th, Your Honor.  And it will be one of the four
3  things that I have laid out for the Court, it can either
4  sunset the ordinance, it expands it, it contracts it, it
5  clarifies it.  All of these --
6          I mean, the debate over this original ordinance
7  lasted three and a half hours.  So there will be a lot of
8  input from everybody and then they will make a decision and
9  Mr. Epps may be happy with their decision at that point.
10 We're talking just a very few days from now.
11         The other thing I would say is I have an idea that
12 our answer, which we are preparing right now to all of this,
13 will be very illuminating hopefully for the Court.
14         THE COURT:  Well, that's great.  We like to be
15 illuminated.
16         Well, I just don't feel like I can enter any order
17 for you now, Mr. Epps.  I mean, I see -- it is easy for me
18 conceptually to see a problem with shutting a gun store down.
19 It's easy because people can't buy guns and ammunition.  If
20 you can't buy ammunition you might as well not have a gun and
21 that's tantamount to depriving somebody of gun ownership.
22 That seems to be problematic to me.  But I don't know.
23         I mean, I've read the Heller decision but it's been
24 probably two or three years.  And then there was a decision
25 that came out of the Fourth Circuit where cert was denied and

1  I think it was Virginia that imposed some pretty strict rules,
2  but it wasn't like, "No, you can't sell guns anymore."  It
3  wasn't that.
4          So, anyway, that's the best I can do right now.  I
5  think what we need to do is to schedule another telephone
6  conference and let's find out what the commission does and
7  then we will go from there.  All right?
8          When do you -- do we want to do this Friday or do we
9  want to do it Monday?
10         MR. TOLLEY:  The Commission is meeting on the
11 seventh which is next Tuesday, Your Honor.
12         THE COURT:  Next Tuesday, okay.
13         MR. TOLLEY:  It would make sense either to do it
14 late in the day on Wednesday.  Because I think both sides will
15 need a chance to read it, whatever it is that it gets done.
16 So either Wednesday or Thursday of next week is fine with us.
17 We will make ourselves available.
18         MR. EPPS:  Judge Royal, this is Kevin.  And I'm just
19 asking this from a standpoint of I have no doubt that
20 Athens-Clarke County is going to extend this ordinance and I
21 have no doubt that there will be issues in which they will
22 make changes on Tuesday.  They may try to address this Clyde
23 Armory issue, but they may not be able to address all the
24 issues.
25         Is there any way the Court, Judge Royal, outside of

1  a conference call, is we go ahead and set a briefing schedule
2  and a hearing so that we can at least -- if all goes well and
3  we don't have to do anything after next Tuesday we can let the
4  court know.  But if it doesn't go well and we need to set up a
5  briefing the issues are not going to change related to the
6  constitutional issues between now and whatever the Commission
7  does next Tuesday.
8         And we originally talked about on Friday as to
9  getting an answer and briefing done to you by this Thursday in
10 order to have a hearing on next Monday.  I understand the
11 Court's position as to waiting to see what Athens-Clarke
12 County is going to do next Tuesday.  I think we will know
13 tomorrow at 5:30 during their work session.  But at the end of
14 the day I just would like to set something down so we can keep
15 this thing moving forward.
16        Because Judge Royal I would also tell you, just so
17 you know, I have been alerted that it's not only this same
18 lawsuit that's being filed right here against Athens-Clarke
19 County.  There is one now pending in the Northern District of
20 California that has been filed with these exact issues that
21 are before them as it relates to the due process.  And so
22 there are -- these lawsuits are beginning to hit the federal
23 courts as to what the cities and municipalities are doing.
24        THE COURT:  Well, let me just assure you that we're
25 ready to move out on this when it comes to it.  And Mr. Tolley

1  has already expressed how much work the three lawyers there
2  are doing.  You obviously are geared up for this.  We can do a
3  briefing schedule.  I'm not sure -- you know, Mr. Epps you're
4  not a prophet, you don't know what they're going to do.  It
5  wouldn't surprise me at all if what you say is correct.  But,
6  you know, they are facing a serious lawsuit, but that often
7  doesn't bother politicians anyway.  But, anyway, I don't know
8  what to do about a briefing schedule.  Mr. Tolley?
9              MR. TOLLEY:  Well, like I was telling the Court we
10 will have an answer filed by Friday which is going to have a
11 lot in it.  We will know by next Wednesday what the Commission
12 actually did on Tuesday night next week.  And if we have a
13 conference call that Wednesday, as the Court is proposing or
14 perhaps Thursday, if we need a briefing schedule we are up to
15 it.  I don't think this is going to significantly delay this
16 case that we don't have a briefing schedule today.
17             THE COURT:  Uh-huh.
18             MR. TOLLEY:  That's just my take on it.
19             THE COURT:  Let me just say this, I would say that
20 all the briefing would have to be done by the end of the month
21 and we could have a hearing the first week in May.
22             You know, y'all are sitting there thinking about the
23 work you have to do.  I'm sitting here thinking about the work
24 I have to do.
25             MR. TOLLEY:  And I'm aware the Court has had to

1  significantly move some calendars around.
2          THE COURT:  Right.
3          MR. TOLLEY:  A very time-consuming things before it
4  because I've got some of them.
5          So I'm fine with that.  We will meet the Court's
6  schedule I promise you, whatever happens Friday.
7          THE COURT:  Right.
8          MR. ALLEN:  Judge, this is Ed Allen.
9          THE COURT:  Hey Ed.
10         MR. ALLEN:  Just so I understand.  I think I do, but
11 I don't want to be wrong.  As I understand it from Mr. Tolley
12 there are going -- our particular client, Clyde Armory, is
13 authorized to stay open and continue to sell firearms; is that
14 not correct?
15         MR. TOLLEY:  We believe they have that right Ed
16 under the ordinance right now and they're doing it.
17         MR. ALLEN:  Well, I know we are, Ed.  And this isn't
18 argumentative at all.  I just -- I mean, we're going to tell
19 them that you may proceed forward without -- under the
20 ordinance as written right now with him, just him, he can
21 proceed forward without fear of any repercussions; is that
22 correct?
23         MR. SOWELL:  Your Honor, this is Greg Sowell.  That
24 is correct.  What you've said, he can sell --
25         THE COURT:  Well, you didn't hear that from me, the

1  Judge, but you did hear it from the Agent of the ACC.  So
2  there you go.
3          MR. ALLEN:  And Judge I understand.
4          THE COURT:  Right.
5          MR. ALLEN:  But we've got to tell this man something
6  and I was a bit -- I got a little bit confused as to whether
7  we were all on the same page, okay.
8          MR. SOWELL:  Athens-Clarke County position has not
9  changed.  They could, they can, they will be able to sell guns
10 and ammunition without interference from the county government
11 with regard to the provisions of any emergency ordinance
12 related to the coronavirus.
13         Now we can't say if they violate some rule in some
14 other kind of way that's totally different.
15         MR. ALLEN:  Oh no.
16         MR. SOWELL:  But as it relates to --
17         MR. ALLEN:  No, no.  We all know what we're talking
18 about now, I think.  Thanks.
19         MR. SOWELL:  Okay.
20         THE COURT:  Okay.  What else?  Do y'all need me for
21 anything else?
22         MR. TOLLEY:  No, sir, Your Honor.
23         MR. EPPS:  Judge Royal, do you want to set a time
24 next Wednesday for the call just so we're all aware.
25         THE COURT:  It doesn't matter.  We can say 11:00

1   o'clock, we can say 2:00 o'clock.  It doesn't matter to me.
2           MR. SOWELL:  Your Honor, this is Greg Sowell.  With
3   regard to the time, let me just say from a logistics
4   standpoint and having some familiarity with how the mayor and
5   commission of Athens-Clarke County works.  I think their
6   public meetings and the discussion on an issue like this often
7   times goes well into the late evening, night.  And when the
8   clerk of the commission actually finalizes the final ordinance
9   as amended during the debate perhaps and it's finally voted on
10  it will take her a little time to get it typed and certified.
11  So I would please ask not to have the hearing Wednesday
12  morning.
13          THE COURT:  That's fine.  Let's just say 4:00
14  o'clock Wednesday afternoon.
15          MR. TOLLEY:  That works, Your Honor.
16          THE COURT:  Anything else?
17          MR. ALLEN:  Thank you, Your Honor.
18          MR. SOWELL:  Thank you, Your Honor.
19          THE COURT:  Thank you all.  We'll talk later.
20          MR. TOLLEY:  Bye.
21          MR. EPPS:  Thank you, Judge.
22                  (Proceedings concluded at 3:26 p.m.)
23                          END OF RECORD
24
25

```
 1              CERTIFICATE OF OFFICIAL REPORTER

 2

 3       I, Tammy W. DiRocco, Federal Official Court Reporter,

 4  in and for the United States District Court for the Middle

 5  District of Georgia, do hereby certify that pursuant to

 6  Section 753, Title 28, United States Code, that the foregoing

 7  is a true and correct transcript of the stenographically

 8  reported proceedings held in the above-entitled matter and

 9  that the transcript page format is in conformance with the

10  regulations of the Judicial Conference of the United States.

11

12                        Dated this 31st day of March, 2020

13

14                        /s/ Tammy W. DiRocco

15                        _____
                          Tammy W. DiRocco CCR
16                        Federal Official Court Reporter
```

Tammy W. DiRocco * Federal Reporter * 478-752-2607